[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 26, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-15309
Non-Argument Calendar

_____

D. C. Docket No. 05-00037-CR-3-RV

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NATHANIEL FIELDS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(April 26, 2006)**

Before DUBINA, BLACK and HULL, Circuit Judges.

PER CURIAM:

Nathaniel Fields appeals his conviction for possession with intent to

distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii). Fields asserts the district court erred in denying his motion to suppress evidence. We conclude the district court did not err, and affirm Fields' conviction.

## I. BACKGROUND

Fields filed a motion to suppress evidence recovered from him and his vehicle on February 1, 2005. Fields was detained after officers discovered his car, which matched a description provided by an anonymous informant, in the driveway of a well-known drug house. Prior to the detention, Fields drove away from three marked patrol cars in an accelerated manner, and then walked away from a police officer who was attempting to get his attention. During the course of the detention, Fields was handcuffed and placed briefly in a patrol car. The district court denied the motion to suppress.

## II. STANDARD OF REVIEW

"We apply a mixed standard of review to the denial of a defendant's motion to suppress, reviewing the district court's findings of fact for clear error and its application of law to those facts *de novo*." *United States v. Lyons*, 403 F.3d 1248, 1250 (11th Cir.), *cert. denied*, 126 S. Ct. 732 (2005). Moreover, "all facts are construed in the light most favorable to the prevailing party below." *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000).

2

III.  DISCUSSION

A. *Reasonable suspicion to stop Fields*

Fields asserts his detention was not supported by reasonable suspicion, as his facts are synonymous with the facts of *Florida v. J.L.*, 120 S. Ct. 1375 (2000).  He contends the officers acted solely on an anonymous tip, in which the tipster provided the officers with a physical description of two vehicles, but provided no predictive information as to future conduct.  Fields further notes the caller failed to provide a description of the occupants of either vehicle, and there were discrepancies between the vehicle described by the tipster and his car.  Fields also contends presence in a high crime area and walking away from police are insufficient to establish reasonable suspicion for a stop.  Lastly, Fields asserts the court's finding he was in a known drug-trafficking area was erroneous because there was no support for this finding, other than Deputy Bruster's allegations at the suppression hearing, allegedly based on previous anonymous calls.

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  U.S. Const. amend. IV.  The Fourth Amendment's "protections extend to brief investigatory stops of persons or vehicles."  *United States v. Arvizu*, 122 S. Ct. 744, 750 (2002).  For brief investigatory stops, the Fourth Amendment is satisfied if the

police officer has reasonable suspicion to believe criminal activity may be afoot. *Id.* (citing *Terry v. Ohio*, 88 S. Ct. 1868, 1884-85 (1968)). When evaluating whether reasonable suspicion exists to make such a seizure, the district court must examine the totality of the circumstances to determine whether the arresting officer had a "'particularized and objective basis for suspecting legal wrongdoing.'" *United States v. Hunter*, 291 F.3d 1302, 1306 (11th Cir. 2002) (quoting *Arvizu*, 122 S. Ct. at 750). "[A] reviewing court must give due weight to the officer's experience." *United States v. Briggman*, 931 F.2d 705, 709 (11th Cir. 1991).

We have found a defendant's presence in a high crime area and his nervous or evasive behavior are relevant factors in determining reasonable suspicion. *Hunter*, 291 F.3d at 1306-07 (finding reasonable suspicion where defendant was located in an area with a reputation for high crime and walked away from illegal activity upon arrival of police); *United States v. Gordon*, 231 F.3d 750, 755-56 (11th Cir. 2000) (finding reasonable suspicion where defendant was in an area known for drug sales and walked toward his car upon the arrival of police); *Briggman*, 931 F.2d at 709 (finding reasonable suspicion where defendant was parked in a high crime area and then attempted to evade an officer by driving away).

4

Reasonable suspicion need not be based on an officer's personal observations, but rather may be based on information supplied by another person, so long as the information bears sufficient indicia of reliability. *Adams v. Williams*, 92 S. Ct. 1921, 1924 (1972) (habeas context). An anonymous tip alone lacks sufficient indicia of reliability where the tip merely provides an accurate description of a subject's readily observable location, but provides no predictive information that would provide the police with the means to test the informant's knowledge or credibility. *J.L.*, 120 S. Ct. at 1379. "[A] suspect's *adverse* reaction to police may independently *corroborate* information provided by an anonymous informant." *United States v. Heard*, 367 F.3d 1275, 1280 (11th Cir.) (emphasis in original), *cert. denied*, 125 S. Ct. 235 (2004).

In light of the totality of the circumstances, Deputy Bruster had reasonable suspicion to stop Fields. Although the tip *alone* may have been insufficient to support a finding of reasonable suspicion, the tip, along with Fields' presence at a house known by officers in the area for high drug activity, a short distance from the intersection described by the informant, and Fields' evasive behavior in first driving away in an accelerated manner from three marked patrol cars and then later walking away and ignoring Deputy Bruster's attempts to get his attention, are sufficient for a finding of reasonable suspicion. These facts are analogous to

5

*Hunter, Gordon* and *Briggman*, which found a defendant's presence in a high crime area and attempts to evade police sufficient for a finding of reasonable suspicion. *See Hunter*, 291 F.3d at 1306-07; *Gordon*, 231 F.3d at 755-56; *Briggman*, 931 F.2d at 709.

The district court did not clearly err in finding the house where Fields was discovered and the surrounding area had a reputation for drug-trafficking. The court, in making this finding, found Deputy Bruster credible on the reputation of the area. Credibility determinations are within the province of the finder of fact. *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). Fields contends Deputy Bruster had no basis for this testimony other than previous anonymous calls. Nothing from the record indicates, however, the previous calls were in fact anonymous, and Deputy Bruster, with about three and one half years on the force, was aware of the areas in the community prone to criminal activity.

Additionally, *J.L.* differs from this case in important respects; *J.L.* did not involve a defendant located in a high crime area, and there was no indication the defendant engaged in any behavior to evade the police. 120 S. Ct. at 1377. Accordingly, the district court did not err in finding Deputy Bruster had reasonable suspicion to stop Fields.

B. *Detention/Arrest of Fields*

Next, Fields contends his detention constituted an arrest for which a showing of probable cause was necessary. Fields asserts Deputy Bruster's actions in handcuffing him and placing him in a patrol car were unreasonable because the officer did not have an objective reason to believe he was armed and dangerous after (1) a pat-down of his person revealed no weapons, and (2) a computer check on his Washington license returned negative.

"[A]n officer's investigation of a traffic stop must be 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Boyce*, 351 F.3d 1102, 1106 (11th Cir. 2003) (quoting *Terry*, 88 S. Ct. at 1879). "[W]hen the totality of circumstances indicate that an encounter has become too intrusive to be classified as a brief seizure, the encounter is an arrest and probable cause is required." *United States v. Espinosa-Guerra*, 805 F.2d 1502, 1506 (11th Cir. 1986). In determining whether a seizure is an arrest or stop, we consider the following four non-exclusive factors: (1) the law enforcement purposes served by the detention; (2) the diligence with which the police pursued their investigation; (3) the scope and intrusiveness of the detention; and (4) the duration of the detention. *United States v. Acosta*, 363 F.3d 1141, 1146 (11th Cir. 2004). In analyzing whether law enforcement purposes are served by the detention, we consider whether the officer detained the defendant to pursue a

7

method of investigation likely to confirm or dispel the officer's suspicions quickly with minimal interference. *Id.* The fact the investigation could have been accomplished by less intrusive means does not automatically render a *Terry* stop unreasonable. *United States v. Sharpe*, 105 S. Ct. 1568, 1575-76 (1985).

An officer's action in handcuffing a defendant or securing him in a patrol car does not automatically convert a *Terry* stop into an arrest. *Acosta*, 363 F.3d 1147. The inquiry as to whether the use of a particular restraint converts a stop into an arrest is reasonableness. *United States v. Kapperman*, 764 F.2d 786, 791 n.4 (11th Cir. 1985). Police are permitted to take reasonable action to protect themselves or to maintain the status quo. *Id.*

The district court did not err in treating Fields' detention as a *Terry* stop, as opposed to an arrest, because Deputy Bruster's actions in handcuffing Fields and placing him in his patrol car were reasonable under the circumstances. We have recognized that "[d]rug dealing is known to be extremely violent." *United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1221 (11th Cir. 1993). In light of the nature of the suspected offense, it was reasonable for Deputy Bruster to believe Fields was going to pull out a weapon when Fields reached for his back pocket while walking away. Moreover, Deputy Bruster's action in handcuffing Fields was reasonably necessary to preserve the status quo. Given Fields' behavior in ignoring

Deputy Bruster and walking away when Deputy Bruster attempted to engage him in conversation, Deputy Bruster could have reasonably believed restraining Fields was necessary to prevent him from escaping so that Deputy Bruster could conduct his investigation.

Deputy Bruster claims to have placed Fields in the patrol car because it was raining. An officer's action in placing a defendant in a patrol car due to weather conditions does not convert the officer's *Terry* stop into an arrest. *Thomas v. Newsome*, 821 F.2d 1550, 1554 (11th Cir. 1987) (habeas context). Deputy Bruster's action in placing Fields in the patrol car was reasonable to ensure the officer's safety and to provide for Fields' comfort. Moreover, any belief by Fields that he was being arrested would have been dispelled by Deputy Bruster repeatedly informing Fields that he was not under arrest.

The other factors considered by courts in determining if a detention is a stop or an arrest also weigh in the Government's favor. Deputy Bruster had reasonable suspicion to believe Fields was involved in a serious crime, and pursued a method of investigation likely to confirm or dispel his suspicions quickly. *See Acosta*, 363 F.3d at 1146. After obtaining Fields' licenses, Deputy Bruster checked quickly to see if the licenses were valid and if Fields had any warrants showing a background in narcotics-related activities. An officer may ask a suspect to identify himself or

request to see a suspect's identification during the course of a *Terry* stop. *See Diaz-Lizaraza*, 981 F.2d at 1221. There is no indication from the record that Deputy Bruster did not conduct his investigation with diligence, and he detained Fields for no more than ten minutes before issuing a formal arrest. Moreover, he issued a formal arrest immediately after determining he had probable cause to arrest Fields due to Fields' suspended license. Accordingly, the district court did not err in finding Fields' detention reasonable.

## IV. CONCLUSION

Under the totality of the circumstances, Deputy Bruster had reasonable suspicion to detain Fields and investigate if he was involved in a narcotics violation. Moreover, Deputy Bruster's action in handcuffing Fields and placing him in a patrol car was reasonable in order to protect his safety, to maintain the status quo by assuring Fields would not escape, and to provide for Fields' comfort in the rainy weather. The district court did not err in denying Fields' motion to suppress, and we affirm Fields' conviction.

AFFIRMED.